UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUILLERMO EUSEBIO PELAEZ BELLO, A-037-620-280,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, CALIFORNIA CITY IMMIGRATION PROCESSING CENTER,<br><br>Respondent. | No. 1:26-cv-05310 TLN AC<br><br><u>FINDINGS AND RECOMMENDATIONS</u> |

Petitioner, a self-represented immigration detainee, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Also pending before the court is petitioner's motion for expedited consideration. ECF No. 8. For the reasons discussed below, the undersigned recommends petitioner's petition be granted, petitioner be immediately released, and respondent be enjoined from unlawfully re-arresting or re-detaining petitioner. In light of these findings and recommendations, petitioner's motion for expedited consideration is denied as moot.

I. <u>Factual Background</u>

Petitioner is a native and citizen of Cuba who was admitted into the United States as a lawful permanent resident on or about April 30, 1983. ECF No. 6-1 at 3, 7. On June 25, 2002, petitioner was issued a Notice to Appear, charging him as deportable pursuant to sections 237(a)(2)(A)(iii) and 237(a)(2)(B)(i) of the Immigration and Nationality Act ("INA") (8 U.S.C.

§§ 1227(a)(2)(A)(i)), 1227(a)(2)(B)(i)). ECF No. 6-1 at 7-9. On September 18, 2002, an immigration judge ordered petitioner removed to Cuba, and petitioner did not appeal. Id. at 83-84; ECF No. 1 at 4.[1] On April 2, 2003, petitioner was released on an Order of Supervision ("OSUP"). ECF No. 6-1 at 3, 90-91.

On or about October 28, 2025, petitioner was taken into immigration custody from the Florida Department of Corrections in Miami, Florida, following convictions for dealing in stolen property, grand theft third degree, and burglary of an unoccupied conveyance. Id. at 3, 12-13, 38-41; ECF No. 1 at 2, 4. ICE issued a Warrant of Removal/Deportation for petitioner, dated November 4, 2025, and a Notice of Removal, dated November 14, 2025, indicating that ICE intends to remove petitioner to Mexico, a third country. Id. at 87-88, 96.

Several months later, on June 1, 2026, Immigrations and Customs Enforcement ("ICE") issued a Notice of Revocation of Release indicating that petitioner's release was revoked pursuant to 8 C.F.R. § 241.13(i) because he violated a condition of his release and "[c]ircumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future." ECF No. 6-1 at 90-91. On five occasions between November 7, 2025, and July 8, 2026, ICE issued petitioner a Warning for Failure to Depart (Form I-229a), which asserts that INA § 241(a)(1)(C) provides for extension of the statutory removal period if a noncitizen "refuses, during the removal period, to make application in good faith, for a travel or other document necessary for the [noncitizen's] removal or departure or conspires or acts to prevent the [noncitizen's] removal subject to an order of removal," accompanied with notices of ICE's intention to remove him to Mexico. Id. at 93, 96, 98, 100-02, 111-13, 115-17, 119-21.

---

[1] The court takes judicial notice of the information provided on the Executive Office for Immigration Review's ("EOIR") Automated Case Information webpage, available at https://acis.eoir.justice.gov/en/ (last visited Nov. 5, 2026). See Fed. R. Evid. 201 (court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned); see also City of Sausalito v. O'Neill, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute.").

On March 23, 2026, ICE determined to continue petitioner's detention. Id. at 107-09. Petitioner has remained detained at the California City Immigration Processing Center. ECF No. 1 at 1; ECF No. 8.

II. Procedural History

On July 10, 2026, the court received the petition for writ of habeas corpus, which challenges petitioner's detention under 28 U.S.C. § 2241. ECF No. 1. Respondent was directed to respond to the petition and required to "substantively address whether there are any factual or legal issues that materially distinguish this case from Pham v. Warden, No. 1:25-cv-01873-DC-AC (HC), 2026 WL 849861 (E.D. Cal. Mar. 27, 2026), and other similar cases previously decided by this court." ECF No. 5. Respondent filed a response, and petitioner has submitted a reply. ECF Nos. 6, 7. Petitioner subsequently filed a notice of ripeness and motion for expedited consideration. ECF No. 8.

III. Legal Standard

A writ of habeas corpus may be granted to anyone who is held in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3); Magana-Pizano v. I.N.S., 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'" (citations omitted)). In federal habeas proceedings, the petitioner is required to prove their case by a preponderance of the evidence. Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

"District courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order[.]" Lopez-Marroquin v. Barr, 955 F.3d 759 (9th Cir. 2020) (citation omitted); see also Zadvydas v. Davis, 533 U.S. 678, 688 (2001) ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

////

////

IV. Discussion

A. Overview

The petition asserts that petitioner has been detained beyond the six-month statutory removal period under 8 U.S.C. § 1231(a). ECF No. 1 at 6-7. Petitioner asserts that his continued post-removal order detention violates his due process rights because his removal is not significantly likely in the reasonably foreseeable future. Id. (citing Zadvydas, 533 U.S. 678). He asserts that Cuba's acceptance of noncitizens for repatriation "remains limited and uncertain" and that respondents have not secured travel documents or otherwise demonstrated a realistic prospect of his removal. Id. at 6.

In response, respondent asserts that petitioner's detention under 8 U.S.C. § 1231 remains lawful because immigration authorities have notified petitioner of their intent to remove him to Mexico, a third country, and "[t]he only thing preventing Petitioner's removal to Mexico is his refusal to cooperate." ECF No. 6 at 1, 4-5. Respondent asserts that petitioner has not indicated that he has any fear of removal to Mexico and argues that, if petitioner refuses to cooperate with his removal to Mexico without claiming fear of removal to Mexico, 8 U.S.C. § 1231(a)(1)(C) authorizes his continued detention. Id. at 6 (citing Lema v. I.N.S., 341 F.3d 853 (9th Cir. 2003)). Respondent contends that Pham is distinguishable because petitioner "has been given ample notice of the government's intent to remove him to Mexico and DHS has given Petitioner extensive process in that regard." Id.

In reply, petitioner maintains that he has supplied good reason to believe his removal is not significantly likely in the reasonably foreseeable future, and argues that respondent has not rebutted that showing as required by Zadvydas. ECF No. 7 at 5. Petitioner highlights that his removal order has existed since 2002 and respondent has not identified any travel document, itinerary, or removal schedule, nor produced any documentation that Mexico has agreed to accept him. Id. at 1. Petitioner asserts that he has, in fact, expressed fear of removal to Mexico since his immigration detention began. Id. at 2-3. He further argues that expressing fear or declining voluntary departure to a third country does not equate to noncooperation under 8 U.S.C. § 1231(a)(1)(C). Id. at 2-3.

B. Legal Standard

The Fifth Amendment Due Process Clause protects persons in the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693 (citations omitted).

Detention of noncitizens who have been ordered removed from the United States is governed by 8 U.S.C. § 1231(a). The statute provides that when a noncitizen is ordered removed, they shall be removed within ninety days, which is referred to as the "removal period." 8 U.S.C. § 1231(a)(1)(A). During the removal period, the noncitizen shall be detained. 8 U.S.C. § 1231(a)(2). "[Section] § 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). After the 90-day removal period has elapsed, ongoing detention is only authorized for "four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Id. at 578-79 (quoting 8 U.S.C. § 1231(a)(6)). The second category includes noncitizens ordered removed under 8 U.S.C. § 1227(a)(2). 8 U.S.C. § 1231(a)(6).

In Zadvydas, the Supreme Court held that 8 U.S.C. § 1231(a)(6), "read in light of the Constitution's demands, limits [a noncitizen's] post-removal-period detention to a period reasonably necessary to bring about that [noncitizen's] removal from the United States. It does not permit indefinite detention." Zadvydas, 533 U.S. at 689. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. "[F]or the sake of uniform administration in the federal courts," the Supreme Court recognized a period of six months to be a "presumptively reasonable period of detention." Id. at 701. "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.

C. Analysis

Respondent does not dispute that petitioner's detention has exceeded the presumptively reasonable six-month period. The record shows that petitioner's current detention since October 28, 2025, and cumulative detention[2] which includes his prior detention from September 18, 2002, to April 2, 2003, well exceeds six months. Accordingly, petitioner's detention is no longer presumptively reasonable.

Respondent argues that petitioner is not entitled to relief under Zadvydas because petitioner has not met his initial burden of showing "good reason to believe that his removal is not reasonably foreseeable." ECF No. 6 at 5. The undersigned initially notes that numerous courts have held that the Zadvydas burden-shifting framework does not apply where a noncitizen was issued a final order of removal, detained, released from detention, and subsequently re-detained. Rather, in such circumstances, it is ICE's burden under 8 C.F.R. § 241.13 to show "on account of changed circumstances . . . that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i); see, e.g., Prado v. Warden, No. 1:26-cv-4738 DJC CSK, 2026 WL 2262335, at *1 n.3 (E.D. Cal. Aug. 5, 2026) (noting that "the burden-shifting scheme outlined in Zadvydas . . . is not applicable to those who were released on Order of Supervision while subject to a removal order based on the lack of foreseeability of removal"); Lopez v. Warden, Cal. City, No. 1:26-cv-05318 DJC AC, 2026 WL 2255222, at 1 (E.D. Cal.

---

[2] Courts within the Ninth Circuit have found that the period of post-final removal order detention is cumulative. See, e.g., Melian S. v. U.S. Attorney General, No. 1:26-cv-4512 TLN CKD, 2026 WL 1862745, at *2-3 (E.D. Cal. June 25, 2026) (explaining that "the Zadvydas presumptive period 'does not reset when the government detains [a non-citizen] under 8 U.S.C. § 1231(a), releases him from detention, and then re-detains him again'") (quoting Sied v. Nielsen, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018)); Nguyen v. Scott, 796 F. Supp. 3d 703, 721-22 (W.D. Wash. 2025) (rejecting argument that detention clock restarts with each re-detention and finding detention not presumptively reasonable based on aggregate period of confinement); Asfestani v. Current or Acting Field Off. Director, No. 1:25-cv-1562 SCR, 2025 WL 3677321, at *4 (E.D. Cal. Dec. 18, 2025); Phan v. Warden of Otay Mesa Det. Facility, No. 25-cv-2369 AJB BLM, 2025 WL 3141205, at *3 (S.D. Cal. Nov. 10, 2025) ("[M]ost courts to consider the issue have concluded that the Zadvydas period is cumulative, motivated, in part, by a concern that the federal government could otherwise detain noncitizens indefinitely by continuously releasing and re-detaining them.") (collecting cases).

Aug. 4, 2026); Pham v. Marin, 2026 WL 712946, at *4 (C.D. Cal. Mar. 11, 2026) ("But as several district courts have recognized, Zadvydas's burden-shifting framework does not apply to noncitizens who are *re-detained* pursuant to the revocation of an OSUP.") (collecting cases); Martinez v. Bondi, No. 1:25-cv-1633 EFB, 2025 WL 3650477, at *3 (E.D. Cal. Dec. 16, 2025) ("Where, as here, petitioner was issued a final order of removal, detained, and subsequently released and then redetained, 'it is [ICE's] burden to show a significant likelihood that the alien may be removed' pursuant to 8 C.F.R. § 241.13") (quoting Escalante v. Noem, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) and collecting cases); Vu v. Noem, No. 1:25-cv-1366 KES SKO, 2025 WL 3114341, at *4-5 (E.D. Cal. Nov. 6, 2025) (finding that the regulations placed the burden on the government to show a significant likelihood of the re-detained noncitizen's removal, noting that "[i]mposing the burden of proof on the [noncitizen] each time he is re-detained would lead to an unjust result and serious due process implications" (quoting Escalante, 2025 WL 2206113, at *3). Here, although the documentation submitted with the response does not include the OSUP itself, it does reflect that petitioner was ordered removed to Cuba in 2002, was released on an OSUP in April 2003, was re-detained in October 2025, and was served with a Notice of Revocation of Release pursuant to 8 C.F.R. § 241.13(i) several months later on June 1, 2026. ECF No. 6-1 at 3, 90-91.[3] Given petitioner's previous release following a final removal order and subsequent re-detention, the regulations place the burden on respondent to demonstrate a significant likelihood of removal in the reasonably foreseeable future.

Even assuming, however, that petitioner has the initial burden under the Zadvydas burden-shifting framework, the undersigned finds petitioner has shown good reason to believe that there

[3] To revoke release, the regulations require that a noncitizen be provided notification of the reasons for the revocation of release at the time of release and afforded a prompt initial informal interview to afford the noncitizen "an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). Petitioner was detained in October 2025 and, according to the documents submitted with the response, was not served with a Notice of Revocation of Release until June 1, 2026. ECF No. 6-1 at 12, 90-91. Thus, the submitted documentation does not support that petitioner's release was revoked in accordance with § 241.13(i) because (1) he was not provided notice of the basis for release "upon revocation" and (2) was not afforded a *prompt* initial informal interview to respond to the basis for revocation. 8 C.F.R. § 241.13(i)(3).

is no significant likelihood of removal in the reasonably foreseeable future. Petitioner asserts that Cuba's acceptance of noncitizens for repatriation is limited and uncertain. ECF No. 1 at 6. An immigration judge ordered petitioner removed to Cuba in 2002, yet the government has not executed petitioner's order of removal to Cuba in over twenty years. ECF No. 6-1 at 83-84. Petitioner has been re-detained for over a year. He asserts that the government has not secured travel documents to either Cuba or Mexico, and it is unclear whether they have even been requested. ECF No. 1 at 6; ECF No. 2-3. District courts have found that similarly situated petitioners, i.e., Cuban nationals whom the government is attempting to remove to Mexico without their consent, have met their initial burden under Zadvydas, especially because Mexico's acceptance of Cuban nationals appears to be conditioned on the consent of the noncitizen. See, e.g., Prado, 2026 WL 2262335, at *2 (collecting cases); S.R. v. Warden of the Cal. City Corr. Ctr., No. 1:26-cv-03587 TLN CSK, 2026 WL 2676077, at *2 (E.D. Cal. Sept. 11, 2026); Galvan Olamendi v. Chestnut, No. 1:26-cv-5946 TLN JDP, 2026 WL 2529758, at *2-3 (E.D. Cal. Aug. 27, 2026); Rodriguez-Fernandez v. Bondi, No. 2:26-cv-00170 TMC, 2026 WL 445562, at *3-4 (W.D. Wash. Feb. 17, 2026). The undersigned finds this sufficient to shift the burden to respondent.

In response, respondent does not argue that it is attempting to remove petitioner to Cuba, as ordered by the immigration judge. ECF No. 6. Rather, respondent states that it is seeking to remove petitioner to Mexico, a third country. Id. Respondent has not produced any evidence that travel documents to either Cuba or Mexico have been secured or even that they have been requested. ECF No. 6. Instead, respondent states that, as early as November 14, 2025, ICE provided petitioner notice of its intent to remove him to Mexico, but petitioner has refused to cooperate. Id.; ECF No. 6-1 at 96. Respondent requests that the court take judicial notice "that the government of Mexico has a 'standing agreement' with the United States to accept Cuban Nationals." Id. at 3. In making this request, respondent has not produced a copy of any such "standing agreement" or outlined its contents. See Fed. R. Evid. 201(c)(2) (providing that the court takes judicial notice upon request of a party "if a party requests it and the court is supplied with the necessary information").

Respondent instead cites to Navarro v. Lyons, 2026 WL 816791 (D. Mass. Mar. 25, 2026), and Sanchez v. Bondi, 2026 WL 160882 (W.D. Wash. Jan. 21, 2026), both of which took issue with the government's attempt to remove Cuban nationals to Mexico. In Navarro, the court propounded several questions of the government, which had represented that 6,000 Cuban nationals had already been sent to Mexico via an "unwritten," "handshake" agreement, and directed the government to produce evidence of such agreement. 2026 WL 816791, at *2-3. In Sanchez, the court found that a Cuban noncitizen's prolonged detention for removal to Mexico, which had exceeded six months, was unlawful where "'Mexico's acceptance [of the petitioner] may be contingent on [his] consent,' which he is unwilling to provide." 2026 WL 160882, at *3-4. While respondent has not provided any further details regarding the "standing agreement," the undersigned notes that several recent decisions from this court involving the prolonged detention and attempted removal of non-consenting Cuban habeas petitioners to Mexico have surmised that Mexico will only accept removal if the noncitizen consents. See, e.g., Garcia v. Warden, No. 1:26-cv-04659 DJC JDP, 2026 WL 2254380, at *2 (E.D. Cal. Aug. 3, 2026) (collecting cases); Palmer-Sardinas v. Chestnut, No. 1:26-cv-3520 DC SCR, 2026 WL 2043395 (E.D. Cal. July 15, 2026), report and recommendation adopted, 2026 WL 2216044 (E.D. Cal. July 31, 2026); Ruiz-Acosta v. Central Valley Annex, No. 1:26-cv-04371 DAD JDP, 2026 WL 1846727, at *2-3 (E.D. Cal. June 26, 2026) (noting that "[the] standing agreement between the United States and Mexico appears to be contingent upon the non-citizens consent to be removed to Mexico, which does not appear to be the case here").

Moreover, "district courts have rejected the argument that the bare existence of a standing agreement between the United States and Mexico is sufficient to rebut [a noncitizen's] initial showing that removal is not reasonably foreseeable, especially where [the noncitizen] does not consent to removal." See Prado, 2026 WL 2262335, at *2 (collecting cases); see also Ramirez Outerino v. Warden, No. 1:26-cv-05326 DJC JDP, 2026 WL 2327873, at *2 n.1 (E.D. Cal. Aug. 11, 2026) ("Courts have noted that that the standing agreement between the United States and Mexico appears premised on Petitioner's compliance and have therefore held removal based on the standing agreement between the United States and Mexico is not reasonably

foreseeable when the noncitizen does not consent to the removal."); Ruiz-Acosta, 2026 WL 1846727, at *3. Here, respondent has not presented any evidence to rebut petitioner's assertion that his removal is not reasonably foreseeable or that he has expressed fear of removal to Mexico. ECF Nos. 1, 6, 7.

Respondent instead places much emphasis on petitioner's refusal to cooperate with the government's intent of removing him to Mexico, stating that petitioner "has been given ample notice of the government's intent to remove him to Mexico" and "[t]he only thing preventing Petitioner's removal to Mexico is his refusal to cooperate." Id. Respondent represents that "[i]f Petitioner were to cooperate with his removal to the Third Country of Mexico," the government can "execute the removal order within three to four days of Petitioner's cooperation." Id. at 3. However, petitioner has no removal order to Mexico, and there is no legal requirement that he cooperate with his removal to Mexico. See Obando Vargas v. Blanche, No. 1:26-cv-5343 DAD AC, 2026 WL 2056618, at *2 (E.D. Cal. July 16, 2026) ("Respondents' argument appears to be that, because petitioner is not agreeing to voluntarily depart to a country he is not from and is under no legal obligation to go to, he may be detained indefinitely. This argument is frivolous and the court admonishes respondents' counsel to avoid wasting the court's time and resources with such arguments in the future."); Torres Cruz v. Chestnut, No. 1:26-cv-4690 DAD SCR, 2026 WL 2057108 (E.D. Cal. July 16, 2026) (finding that "respondent's argument that it may extend petitioner's detention to effect removal because he has declined to cooperate with his removal to a third-country to which he has not been ordered removed is frivolous").

Respondent further asserts that "if Petitioner refuses to cooperate with removal to Mexico without claiming a fear of removal to Mexico, 8 U.S.C. § 1231(a)(1)(C) authorizes the continued detention of a removable alien so long as the alien fails to cooperate fully and honestly with officials." ECF No. 6 at 5 (citing Lema, 341 F.3d at 857). In support, respondent submitted evidence that petitioner has been served with a Warning for Failure to Depart (Form I-229(a)) on multiple occasions, notifying him that the statutory removal period may be extended pursuant to INA § 241(a)(1)(C) based on a noncitizen's refusal to assist in removal. See ECF No. 6-1 at 93-94, 100-01, 112-13, 116-17, 120-21. While a noncitizen's refusal to reasonably cooperate with

removal may in some circumstances justify further detention, such circumstances are not present here. Section 1231(a)(1)(C) permits tolling of the 90-day removal period if the noncitizen "fails or refuses to make timely application in good faith for travel or other documents necessary to the [noncitizen's] departure or conspires or acts to prevent the [noncitizen's] removal *subject to an order of removal*." 8 U.S.C. § 1231(a)(1)(C) (emphasis added). Respondent's reliance on Lema is similarly misplaced. In that case, the Ninth Circuit upheld the continued detention of an Ethiopian national who refused to effectuate his order of removal to Ethiopia. 341 F.3d at 857. The Ninth Circuit concluded that the noncitizen could not meet his burden under Zadvydas to show no significant likelihood of removal in the reasonably foreseeable future because "the record contains substantial evidence that Ethiopia's reluctance to issue Lema travel documents is caused by Lema's continuing failure to cooperate with United States and Ethiopian officials to secure travel documents from Ethiopia." Id.

Here, however, petitioner's removal order only addresses his removal to Cuba, not to Mexico, ECF No. 6-1 at 83-85. The government is not authorized to extend the statutory removal period based on petitioner's refusal to consent to his removal to a third country. Galvan Olamendi, 2026 WL 2529758, at *2 n.2 ("As petitioner's order of removal only addresses his removal to Cuba, . . . his refusal to go to Mexico did not extend the statutory period."); Ramirez Outerino, 2026 WL 2327873, at *2 ("[T]he Government cannot use indefinite detention to manufacture noncitizens' consent to removal to a third country."); Herrera Gonzalez, 2026 WL 2268763, at *3 (finding that § 1231(a)(1)(C) did not authorize detention of a noncitizen ordered removed to Cuba based on the government's assertion that he refused to cooperate with his removal to Mexico as a third country).

Finally, the undersigned observes that some of respondent's response focuses on petitioner's criminal history. ECF No. 6 at 1-3. However, the Ninth Circuit has held that "dangerousness cannot justify indefinite detention under Zadvydas[.]" Tuan Thai v. Ashcroft, 366 F.3d 790, 798 (9th Cir. 2004); see also Obando Vargas, 2026 WL 2056618, at *2 ("[B]inding Ninth Circuit and Supreme Court authority forecloses the import of criminal history in determining whether petitioner is entitled to release from detention pursuant to 8 U.S.C.

§ 1231(a)(6), both insofar as that history suggests petitioner is a danger or a risk of flight"); Kovalchuk v. Martinez, No. 1:26-cv-00978 JLT FJS (HC), 2026 WL 1179736, at *1 n.1 (E.D. Cal. Apr. 30, 2026) (explaining that controlling Ninth Circuit authority has held that even serious criminal history "does not obviate the normal Zadvydas analysis") Yakoub v. Marin, 2026 WL 922015, at *6 (C.D. Cal. Mar. 31, 2026) ("Under binding Supreme Court and Ninth Circuit precedent, a noncitizen's danger to the community is not material in the Zadvydas analysis."). Indeed, the noncitizen in Zadvydas had a lengthy criminal history and his continued detention was premised upon a history of flight from both criminal and deportation proceedings. 533 U.S. at 684. The Supreme Court held that § 1231(a)(6) simply did not authorize a noncitizen's potentially indefinite detention, even if such detention were premised on "protecting the community from dangerous aliens." Id. at 697.

Accordingly, since respondent has not presented any evidence to rebut petitioner's showing, the undersigned recommends that the petition be granted on this claim because petitioner's removal is not reasonably foreseeable and his "continued detention [is] unreasonable and no longer authorized by statute." Zadvydas, 533 U.S. at 699-700.

Having found no evidence that petitioner's removal is reasonably foreseeable, the appropriate remedy is petitioner's immediate release under appropriate conditions of supervision. See Zadvydas, 699-700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the [noncitizen's] release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances."); see also,e.g., Yang v. Warden, California City Corr. Ctr., No. 2:26-cv-00832 DAD DMC, 2026 WL 765027, at *2 (E.D. Cal. Mar. 18, 2026) (finding "the remedy for a successful Zadvydas claim is generally release of the habeas petitioner under conditions of supervision"); Celis v. Bondi, No. 2:26-cv-00079 GMN DJA, 2026 WL 710961, at *4 (D. Nev. Mar. 13, 2026) (same, and noting further that "when a court considers a due process claim, it may tailor relief to the specific problem that gives rise to the due process violation"); Nguyen v. Hermosillo, No. 2:26-cv-0335 GJL, 2026 WL 538497, at *5 (W.D. Wash. Feb. 26, 2026) ("The Supreme Court in Zadvydas considered conditional release

the appropriate remedy once detention exceeds the period reasonably necessary to effectuate removal." (citing Zadvydas, 533 U.S. at 699-700)).

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's petition for writ of habeas corpus (ECF No. 1) be GRANTED.
2. Respondent be required to IMMEDIATELY RELEASE petitioner GUILLERMO EUSEBIO PELAEZ BELLO, A-037-620-280, under appropriate conditions of supervision set forth in 8 C.F.R. § 241.5. At the time of release, respondent must return all of petitioner's documents and possessions.
3. Respondent be ENJOINED AND RESTRAINED from re-arresting or re-detaining petitioner without a change in circumstances to warrant petitioner's re-detention and compliance with all procedures set forth in 8 C.F.R. §§ 241.4(l), 241.13(i), and any other applicable statutory and regulatory procedures.
4. Within three days of an order adopting these findings and recommendations, respondent be required to file a notice of compliance confirming petitioner's release.
5. Petitioner's motion to expedite (ECF No. 8) be DENIED as moot.
6. The Clerk of the Court is directed to enter judgment for petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). Within **three** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The parties are

////

////

////

advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 5, 2026

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE